1                    UNITED STATES DISTRICT COURT
                      SOUTHERN DISTRICT OF TEXAS
2                          HOUSTON DIVISION

3

4   UNITED STATES OF AMERICA      *    Criminal No. H-10-886
                                  *
5   VERSUS                        *    Houston, Texas
                                  *    January 4, 2012
6   GERALD R. EVERSOLE            *    10:00 a.m.

7

8                             SENTENCING
              BEFORE THE HONORABLE DAVID HITTNER
9                 UNITED STATES DISTRICT JUDGE

10  For the Government:

11          Mr. John P. Pearson
            Mr. Peter R. Mason
12          U.S. Department of Justice
            Criminal Division - Public Integrity
13          1400 New York Avenue NW
            Suite 1200
14          Washington, D.C. 20005

15

16  For the Defendant:

17          Mr. Rusty Hardin
            Mr. Anthony D. Drumheller
18          Rusty Hardin & Associates, P.C.
            1401 McKinney
19          Suite 2250
            Houston, Texas 77010

20

21  Court Reporter:

22          Fred Warner
            Official Court Reporter
23          515 Rusk Ave.
            Houston, Texas 77002

24

25  Proceedings recorded by mechanical stenography, produced by
    computer aided transcription.

1        THE COURT:  Court calls the case, criminal matter

2   10-886-01, United States versus Gerald Eversole.

3            Who represents the government?

4        MR. PEARSON:  John Pearson and Peter Mason.  Good

5   morning, Your Honor.

6        THE COURT:  For the defense.

7        MR. HARDIN:  Rusty Hardin and Andy Drumheller, Your

8   Honor.

9        THE COURT:  You want to come up, please.

10            Both the government and defense have objections

11   to the presentence report.  I have these notes that I have

12   made.  I am going to read these.  This is the quickest way to

13   do it instead doing it off the top my head, so I apologize

14   for reading.  These are my notes made over the weekend.

15            The government objects saying the guidelines

16   were properly applied; however, the government has one

17   factual objection to the presentence report in Paragraph 33

18   where it states other criminal conduct.

19            The defendant -- it goes on.  I am just going

20   to summarize it because it goes for a bit.  The defendant was

21   arrested for record keeping, this defendant, in Harris County

22   many years ago; but the offense was later expunged.  The

23   government says this is incorrect and misleading.

24            In 1993 it stated the defendant was indicted on

25   four counts of perjury for misrepresentation under oath for

1  the reimbursement of personal funds used for campaign

2  expenditures.

3              The State District Court quashed the

4  indictment.  The 14th Court of Appeals affirmed, and Texas

5  Court of Criminal Appeals, the highest criminal court in the

6  state, denied both the state and Eversole's position for

7  petition for review.

8              The state then charged Eversole again with four

9  counts of failing to maintain office holder records.  The

10  trial court granted the defendant's motion to quash as the

11  case should have been brought -- at least this was the

12  statement -- in the District Court rather than the County

13  Court.  State Court of Appeals affirmed.

14              The response is that the presentence report

15  notes the government's clarification has no effect on the

16  guidelines.

17              The defendant's objections.

18              Clerical corrections, including name of

19  attorney and so forth, on Page 1 and Page 2.  Those are

20  granted, just plain historical corrections.

21              Then we come down to the others.

22              The defense objects throughout, its objections

23  to Paragraphs 29 and 83 as to defendant accepting money and

24  things of value from Surface intending to be influenced, also

25  subject to inferences of the defendant's state of mind.

1           The response was pretty standard relative to

2   the presentence report.  The information was secured from the

3   investigator files but has no impact on the guidelines.

4           Additional objections to Paragraph 29 and 83 as

5   offense behavior.

6           The response is, the dismissed counts may be

7   considered offense conduct but not part of the relevant

8   conduct.  That was basically what we discussed a few moments

9   ago.  It can be considered, but it's not part of the offense

10  conduct; but under the guidelines and the court cases, it

11  can, the whole universe of the facts relative to each case

12  can be considered even though not part of relevant conduct.

13          Additional objections to these two, the same

14  two Paragraphs 29 and 83 are being used as a basis for an

15  upward departure.  The Court -- also defendant refers to some

16  case law directly on point.

17          The response discusses guideline 5K2.21

18  concerning grounds that a Court may consider in an upward

19  departure.  Paragraph 83 is merely a factor for the Court to

20  consider in any upward departure and is not a recommendation,

21  just informing, in effect, of the Court and of the various

22  parties as to what could occur under the existing case law

23  and the guidelines.

24          Aside from what you have in writing, any

25  additions or corrections by the government?

1           MR. PEARSON:  No, Your Honor.  Thank you.

2           THE COURT:  Any additions or corrections by the

3   defense?

4           MR. HARDIN:  No, Your Honor.

5           THE COURT:  Aside from those, the two matters that

6   were granted just as historical matters, any objections are

7   overruled.  The presentence report and all addendums are

8   hereby adopted by this Court.

9               I want to go through some of the matters that I

10   have here.  Only one letter, by the way -- we also have the

11   same letter from that Assistant U.S. Attorney -- the County

12   Attorney that was filed on behalf of both defendants, and I

13   have read that; and it's also in this file for both.  I have

14   already made my statements on the detailed analysis and

15   advice that are received.

16               One letter was received, I do need to state,

17   from the public that was not complimentary of the defendant

18   in this case.  All the others were.

19               I will say this, that I have been around here

20   for 25 years on the federal side.  This is best collection of

21   letters and the content of letters that I have seen.  I have

22   read over 185 here plus a few singular.  I want to address a

23   few of them.

24               Only two came out and said that these

25   allegations were false.  That just happens to be Letter No. 1

1   and Letter No. 20.  All the rest were extremely positive and
2   gave a background.
3              I just want to mention a couple, a couple of
4   them, which I sometimes do.  The volume wasn't the same for
5   the other defendant.
6              The ones that made a positive at least were
7   nice letters.  They all were.  But there was one from a man,
8   a Jay Arnold, another handwritten from the Daly family,
9   D-a-l-y, another one from the Denny family, D-e-n-n-y.
10             As to No. 45, there was no letter in No. 45.
11  It was just a blank.  So I am going to keep moving on.
12             There was a letter also that made a positive
13  impression from the Gustafson family, and another one from a
14  man named Nguyen, N-g-u-y-e-n.
15             Aside from those few, those two that I
16  mentioned, the one negative, they were all positive.  I read
17  them all.
18             I might state that aside from that one
19  negative one advisory letter I received from an Assistant
20  County Attorney, we also have one that came in at the same
21  time that was right on line from the current County Attorney.
22  And there were other folks, public officials and lots of
23  private citizens.
24             I do want to address one matter.  The
25  government has already stated, in the prior rearraignment has

stated, the government filed a 20-page memo, sentencing memorandum and then an additional 44 pages of attachments and exhibits for a total of 64 pages relative to its position on the sentencing in this case.

And just to repeat what Mr. Pearson said, it was consistent with what he said in his sentencing memorandum, that this case presents an opportunity for the Court to send a message that this conduct in public contracting is not only inappropriate but will be punished, and the very last sentence on the conclusion, "for the reasons above, the government requests that the Court sentence both defendants to incarceration."

I just want to read one statement without comment, one statement without comment that I got from the sentencing memorandum of the defense that was filed by Mr. Hardin and Mr. Drumheller.  It's on Page 23.  This is the defense statement to the Court relative to this case.  As I say, I am not going to comment on it.  I am going to proceed right to the sentencing after this.

It states:  "The government's attempt now to have him," meaning Mr. Eversole, "punished for allegations that they could not prove and they have now abandoned in order to secure a face-saving plea is incredibly unseemly. They chose not to invoke their right to a jury trial again. They should not be asking the Court to punish Mr. Eversole

1    for charges they did not have the courage to litigate, or in

2    this case relitigate.  If they believe so strongly in the

3    positions they now urge to the Court to use as a basis for

4    punishing Mr. Eversole, they should have had the fortitude to

5    insist on a trial and let a jury decide."

6                     With that background, counsel, do you desire to

7    make a statement on behalf of your client?

8              MR. HARDIN:  Very briefly, Your Honor.

9                     I first want to -- I can say that I have done

10   this 37 years, and I have never seen a product like Mr.

11   Drumheller put together in this case.  I don't want to fly

12   under false colors.  This sentencing memorandum and the

13   collection of these letters was largely due to the effort of

14   Andy Drumheller, as is the writing.

15                    I will say to you that I only added two things

16   to this memorandum, and one of them is the paragraph you just

17   read.  I feel very, very strongly about this whole issue of

18   this other conduct they contend the relevant conduct should

19   be considered.

20                    The whole reason that Mr. Eversole's letter

21   addressed the two matters that were the most controversial in

22   the trial that the Court heard was because we never presented

23   our side.  I made a tactical decision to not put on a case

24   and to let the jury decide.  The jury couldn't reach an

25   agreement.  The jury, the majority of them didn't agree with

1    our position at the time they adjourned and returned a hung

2    jury; but they never heard our side because I chose not to go

3    forward.  That was not a decision of Mr. Eversole.  He agreed

4    with it; but, I mean, he's not the one who made the

5    recommendation.  I did.

6              And so, as a result, neither the Court nor that

7    jury nor the public at large has ever heard Jerry Eversole's

8    explanation as to what these transactions that were so,

9    considered so important and spent so much time on by the

10   government in this particular memorandum.  And so, his letter

11   to the Court address that without for one second ever denying

12   that it was wrong for him to lie to the FBI.  I think we have

13   made --

14         THE COURT:  I am just saying it was not as involved

15   or as detailed as the other one that I referred to, the

16   12-page letter.

17         MR. HARDIN:  Yes, sir.

18              And we have made very carefully clear to the

19   Court that he's accepting full responsibility for what he has

20   pled to.

21              But we also made clear to the government, which

22   is why I am so incensed about this argument they're making

23   today and that they made in their memorandum, we have

24   insisted from the very time we ever started talking to the

25   government about this case, Jerry Eversole never did anything

1    in his official capacity in return for anything from anyone.

2    And as long as the government wanted to insist on that as

3    part -- as their case, there would be no plea and no

4    concession and we would have a trial.

5              But you remember what those allegations

6    included.  At the end of those allegations it includes a tax

7    count.  The government noted, gave notice they were going to

8    seek to forfeit his house.  You know the condition of Mrs.

9    Eversole.  That doesn't need to be continually repeated.  But

10   see, that is the whole reason for that house was moving in to

11   have her closer to MD Anderson treatment.

12             We made clear to the government as recently, as

13   soon before the plea as two or three days before anything was

14   done, Jerry Eversole would never participate in standing in

15   front of this Court on any occasion and any time in his life

16   conceding he did anything in return for anything from Mr.

17   Surface.

18             The government chose to take those counts out.

19   The government chose to have him standing here before you now

20   having pled guilty to one count.  It is unseemly.  It is

21   wrong.  It is outrageous.

22             THE COURT:  Well, it's a five-year max on this one,

23   not a three-year like the other one.  It's not more than five

24   years incarceration.

25             MR. HARDIN:  But he could never have passed

allocution.  If we had ever given in for fear of losing his
house and his wife's health and to avoid a trial and he stood
before you like he does today, he could never have passed
allocution because he could never under God's world ever said
to you under oath that he ever did anything in his official
capacity in return for anything Mike Surface did.

         The government knew that.  I have said it to
them 'til we were blue in the face.  And they ultimate made
the decision to have us here on this FBI one single count.
And that's why I think it's so wrong for them now to do it.
This is not like the ordinary deal where a defendant comes
in, he's charged by the government with a bunch of things.
They pick one thing he pleads guilty to; the government
agrees to dismiss the other.  This is entirely different.

         This was litigated without ever hearing Jerry
Eversole's side, and they could not reach a decision.  And
the government decided here on their own initiation to have
us plead to this.  And he decided that he could do that
because he didn't tell the FBI everything that day when they
came by his house at 8:30 in the morning.

         Having said that, if we take the total picture
of his life, as Mr. Drumheller has painted so articulately,
and we take those letters and we talk about a high school
coach -- I've never seen, I've never seen a cross section of
people express feelings for another human being like these

1   185 letters.

2          And then if we talk about just -- that's just

3   the kind of person he is.  There was never going to be and

4   there never was one single witness that was ever going to

5   come in here and say Jerry Eversole ever did anything

6   dishonest.  They didn't have that.  They had a case that they

7   gave in on and are going to dismiss that they tried to make

8   people believe certain things from circumstances the way they

9   appeared.  These 185 letters tell you who the man is, and

10  they tell you who he is for his entire life.

11         And then if we look at it from a legal

12  standpoint, the commissioners that served with him, both

13  County Judge, the County Judge that was the County Judge at

14  the time has been heard from, Robert Eckels.  Every single

15  one of them have come forward and talked about his integrity

16  and how he conducted that office, and these letters that talk

17  about all he did for his district.

18         And what do they want you to do?  They want you

19  to incarcerate him with charges they did not have the guts to

20  try in front of a jury.  And that's wrong.

21         And so, I don't know -- I listened to Mr.

22  Surface's, his attorney's allocution.  I don't know what a

23  defendant is supposed to do.  You know this is the first time

24  I've appeared in front of you.  You know that I'm not over

25  here as often as a lot of other attorneys, and I am not as

1   sophisticated about the way these sentencing things happen.

2          THE COURT:  Wait a second.  You are pretty

3   sophisticated.

4          MR. HARDIN:  At least as to the sentencing things.

5              And I'm sitting here listening --

6          THE COURT:  I think you have Mr. Drumheller for

7   that.

8          MR. HARDIN:  Mr. Drumheller is the real lawyer on

9   this thing, let me tell you.

10             But I sat down, I listened.  I thought:  What

11  is the defendant supposed to do when the government announces

12  in front of an eagle all these horrible things he did and

13  then the media is full of those allegations; and then there's

14  a trial, they can't get a conviction, and then they fold,

15  totally fold, not on one, not on two, on all five counts, and

16  then they say, "will you take this one and save your

17  defendant the opportunity from losing his house and going to

18  the federal penitentiary for other things, et cetera?"

19             And so the defendant says, yes; but I didn't do

20  these things you charge me with.

21         THE COURT:  Well, the max, he was charged with at

22  least one that had a 10-year count, if I remember.

23         MR. HARDIN:  Yes, sir.  And I think the Court has

24  properly observed, this was a good deal, this was a good deal

25  if you're afraid of what a jury is going to think about a

1  public official.  But that doesn't mean the fact that this
2  was a good deal, to put it that way, ever, ever should put
3  this man in the position of being asked to concede to things
4  he did not do.
5          This is one of the most honest human beings I
6  have ever known.  And there is no way that what the
7  government wants to ask you to do, as he now talks about it,
8  is right.
9          Finally -- now, this is a lawyer's version of
10  brief, and I apologize to the Court -- I got so mad reading
11  this sentencing memorandum of those --
12          THE COURT:  Of who?
13          MR. HARDIN:  Of the sentencing memorandum of the
14  government's, as I was reading it I started writing all these
15  notes; and one of them is:  It is flat wrong what they're
16  representing to you about the early 1990s case.  I
17  represented Mr. Eversole on that.  That's when we became
18  friends.  That was a bookkeeping issue.
19          The District Attorney's office at that time did
20  the same kind of thing these guys did here to try to get a
21  public official.  They contended that when Jerry Eversole
22  filled out his financial reports and put -- and when he
23  reimbursed himself from campaign funds for expenses he made
24  that he believed were in conjunction with his campaign and
25  could be properly campaign expenses, the fact that he listed

1   his name on there instead of the underlying vendor was

2   perjury under the theory that he signed that report and said

3   it was full and complete.

4            What we proved without any doubt is over 95

5   percent of the office holders in the State of Texas,

6   including the then-governor, were doing their reports the

7   same way.

8            THE COURT:  Who was the governor at that time?

9            MR. HARDIN:  Ann Richards.

10           THE COURT:  Go on.

11           MR. HARDIN:  And proved that they were doing it the

12   same way.  And the reason they were doing it the same way is

13   there had been no opinion that said they had to do the way

14   the state and ultimately everybody concluded to do it, that

15   is, put in the underlying vendor.

16           THE COURT:  Go on.

17           MR. HARDIN:  And so, ultimately the cases were

18   quashed on legal grounds.

19            I've looked with some amusement when the

20   government suggests that somehow means it shouldn't be

21   considered that the cases were dismissed.

22            The cases were expunged; but through our error,

23   not Jerry Eversole, we didn't move to expunge the appellate

24   opinions.  So the underlying cases were expunged at the

25   District Court.  And if we had done what we should do, they

1  would have had expunctions at the appellate level as well;

2  but they did not, we did not, and therefore, they could talk

3  about it.

4          But to then bring in here the suggestion that

5  he was doing at campaign expenses, the Harris County District

6  Attorney's office ultimately chose exactly what the

7  government has done here:  To dismiss those allegations to

8  suggest that he had any criminal intent.  And what the

9  appellate decision said were, if they were any offense, it

10 would have been a Class C misdemeanor.

11         THE COURT:  Why don't you return to this case.

12         MR. HARDIN:  In this case, at 8:30 in the morning it

13 is solely about what the government ought to consider.  What

14 I'd ask the Court to consider is that you heard the testimony

15 about this particular event that is the basis of this plea.

16 It did come out, and I cross-examined the FBI agent.

17         And Mr. Eversole has conceded and pled guilty

18 to you saying that when the FBI showed up at his house at

19 8:30 in the morning -- this is before Mr. Surface had been

20 indicted on either case -- they asked him some questions in

21 his living room and they asked him about things that he had

22 received from Mr. Surface.  Mr. Eversole has pled that he did

23 not tell them everything that he had received from Mr.

24 Surface or that he had done with him, and he's accepted

25 responsibility for that.

 1                    Everything else that they have in this

 2    sentencing court is just flat-out wrong.  And we respectfully

 3    ask the Court to take the full measure of this man and the

 4    fact that the government did not have the courage to try the

 5    case they're now asking you to punish him for.

 6              THE COURT:  Mr. Eversole, do you desire to make a

 7    statement on your own behalf?

 8              THE DEFENDANT:  I do not, Your Honor.

 9              THE COURT:  All right.

10                   Government's position.

11              MR. PEARSON:  Thank you, Your Honor.

12                   I'm glad Mr. Hardin brought up the District

13    Attorney's office because I would like to begin --

14              THE COURT:  Move that mic a little.  Sometimes it

15    will carry.

16              MR. PEARSON:  Sure.

17                   This is a case that from its very inception was

18    handled in a very special manner by the Special Crimes

19    Division of the Department of Justice.

20              THE COURT:  In other words, this prosecution came

21    out of Washington, D.C.?

22              MR. PEARSON:  Right.

23              THE COURT:  Where both of you are from, the Attorney

24    General's office in Washington?

25              MR. PEARSON:  We're from the Criminal Division of

1   the Department of Justice.  We are not local AUSAs.  Mr.

2   Mason was.

3            And then going on from there:  "Doesn't the

4   Department of Justice have enough to do prosecuting real

5   burglaries, real murders, real dope cases?  The criminal law

6   is not the way to handle questions like this."

7            THE COURT:  Are you in the Public Integrity

8   Division?

9            MR. PEARSON:  Yes.  We're in the Public Integrity

10  Section.

11           Returning to the quote here:  "The criminal law

12  is not the way to handle questions like this.  This is

13  something for the voters of Harris County."

14           What I have just read is a quote -- it's

15  actually not about this case.  This is a quote taken from the

16  closing argument of a former county commissioner who was

17  tried for official misconduct.  And instead of saying

18  "Department of Justice," the defense attorney at that time

19  said "District Attorney's office."

20           It's clear what the playbook in these cases is,

21  Your Honor.  It's clear that defense counsel feel very

22  strongly about their clients and about their client's

23  innocence, and that's good.  We like that in the system.

24  That makes for sharp advocacy.

25           But it's also clear that the standard of

1   practice in these cases is to criticize the prosecution.  And

2   so I want to pause the issue of the propriety of the

3   prosecution and return to the facts of the case, because the

4   facts of the case is what's going to determine what a just

5   sentence is here.

6           Defendant Eversole is situated differently from

7   defendant Surface.  Not only is there the underlying conduct,

8   which we obviously disagree about.  I think it's become clear

9   to the Court that we were never able to reach agreement on

10  the underlying conduct and the underlying relationship.

11          THE COURT:  Well as Mr. Hardin said, we didn't hear

12  the other side.  But I heard a number of weeks of the

13  testimony that you put on.

14          MR. PEARSON:  And, Your Honor, I would respectfully

15  disagree with the idea that Mr. Hardin didn't get to tell his

16  side of the story.  Through cross-examination of the

17  government witnesses, as well as his opening statement and

18  his closing argument, not to mention his press conferences,

19  Mr. Hardin very robustly represented what his client's

20  position was, which was that he never -- even if he took

21  these things of value, he never did so with the intent to be

22  influenced or rewarded.  He's been very clear about that from

23  the beginning.

24          However you come down on that issue of whether

25  or not the items of value were accepted corruptly with the

intent to be influenced or rewarded, there is still the other

issue of lying to the FBI.  Mr. Hardin said that the

defendant is one of the most honest men he's ever met and

that there was no evidence that he was dishonest.

I think he's probably in the art of advocacy

overlooking the fact that, of course, the defendant is

pleading guilty to lying to the FBI because that's, after

all, why we are here today.  I think it also overlooks the

facts that were presented at trial showing the yearly

financial disclosure forms that don't disclose any of the

benefits that were provided by Mr. Surface.

Even if you take the defense's explanation of

the biggest item, the 63,000 that was provided for Mr.

Eversole's home in 2003, the current explanation from the

defense is that that was to purchase either Eversole's

collection or Eversole's portion of a joint gun collection

and that a further $25,000 was an advance that was lent to

Mr. Eversole.  And just like all the other things of value,

that was never disclosed on his financial disclosure forms.

So I think that's the backdrop that we have to look at, the

offense conduct, whether or not you take the other

materials --

THE COURT:  Well, that all can be considered.

MR. PEARSON:  Absolutely.

THE COURT:  That's how I ruled relative to the

1 objections.  That all can be considered.

2          MR. PEARSON:  And defense counsel for the defendant

3 have both said that they're shocked and surprised that the

4 government would be arguing this offense conduct.  And all I

5 can think about in response to that is the scene from

6 *Casablanca* where the Major Dumeau (sic) walks into Rick's

7 casino and says "gambling in this establishment?  I'm

8 shocked, shocked to find gambling in this establishment."

9          We have been very clear with the defendants and

10 their attorneys from the beginning that even if we reached

11 this plea deal, we're going to bring up this offense conduct

12 and ask the Court to take it into account.  That's Hornbook

13 law, it's Fifth Circuit law, it's in the guidelines manual.

14 And so, it can't be a surprise to them.  They can react

15 however they wish.  That's their right.

16          But to bring you back to the issue of the facts

17 of this case, whether or not you take into account that

18 offense conduct, you have to look at this fact:  The

19 investigation in this case took time.  This was a tough case

20 to investigate and a tough case to prosecute.  This is not a

21 case involving cash in a suitcase or a wiretap or undercover

22 recordings.  This is a case that was made through painstaking

23 step after painstaking step.

24          And I'd like to take the opportunity to thank

25 the hardworking agents of the FBI and the IRS who put this

1  case together.  Their efforts were amazing.  I can't say

2  enough about them.

3            When they investigated this case, they had to

4  go to different people, different places.  They had to ask of

5  those people tough questions.  They had to ask them personal

6  questions.

7            Those people had three options:  They could

8  have answered truthfully, they could have declined to answer

9  the questions; but it was defendant Eversole who chose the

10  third option, which was to lie to the FBI.

11            And so, we would ask you to sentence the

12  defendant to incarceration based on those 3553(a) factors.  I

13  don't need to restate my argument about the need for

14  deterrence.  That's in the memo, and I have made it as to the

15  defendant Surface.  But I do think it's possible to see

16  defendant Eversole situated differently based on his offense

17  conduct alone because of that conscious decision he made to

18  the lie to the FBI in 2007.

19            THE COURT:  All right.  Counsel, do you know any

20  reason why your client should not be sentenced at this time?

21            MR. HARDIN:  No, Your Honor.  I would only point out

22  that since we are talking about movies, the movie *Cool Hand*

23  *Luke* I think applies.  And I think what we have here is a

24  failure to communicate.  We're not surprised.  We're just

25  disappointed.

1            We are ready.

2            THE COURT:  Counsel, do you know any reason why your

3    client should not be sentenced at this time?

4            MR. HARDIN:  No, Your Honor.

5            THE COURT:  I have considered 18, United States

6    Code, Section 3553(a).  I feel that a sentence within the

7    guidelines is appropriate.

8                  It's the judgment of the Court the defendant is

9    hereby placed on probation for a term of three years as to

10   Count 1S.  While on probation he will not commit another

11   federal, state or local crime, shall comply with the standard

12   conditions that have been adopted by this Court under General

13   Order 1996-10, abide by any mandatory conditions required by

14   law and comply with the following additional conditions:

15                  The mandatory drug testing condition is

16   suspended based upon the Court's determination that the

17   defendant, based upon what I know, poses a low risk of any

18   substance abuse.

19                  The defendant shall cooperate in the collection

20   of a DNA sample from the defendant if the collection of such

21   a sample is authorized pursuant to Section 3 of the DNA

22   Analysis Backlog Elimination Act of 2000.

23                  The defendant shall not possess a firearm,

24   ammunition, destructive device or any other dangerous weapon.

25                  It's ordered the defendant shall pay to the

1  United States a special assessment statutorily of $100.  I

2  find he does not have the ability to pay a fine, and I'll

3  waive a fine in this case.  That $100 is due immediately, and

4  payment is to be made through the United States District

5  Clerk, Southern District of Texas.

6              Anything further from the government?

7         MR. PEARSON:  No.  Thank you, Your Honor.

8         THE COURT:  Anything further from the defense?

9         MR. HARDIN:  No, Your Honor.

10        THE COURT:  Thank you.  We will stand adjourned.

11

12

13              (Conclusion of Sentencing)

14

15

16

17

18

19

20

21

22

23

24

25

1                              CERTIFICATION

2

3

4

5              I, Fred Warner, Official Court Reporter for the

6   United States District Court for the Southern District of

7   Texas, Houston Division, do hereby certify that the foregoing

8   pages 1 through 24 are a true and correct transcript of the

9   proceedings had in the above-styled and numbered cause before

10  the Honorable DAVID HITTNER, United States District Judge, on

11  the 4th day of January, 2012.

12              WITNESS MY OFFICIAL HAND at my office in Houston,

13  Harris County, Texas on this the 17th day of February, A.D.,

14  2012.

15

16

17

18

19                           _____
                                  Fred Warner, CSR
20                               Official Court Reporter

21

22

23

24

25